[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 18, 2009
THOMAS K. KAHN
CLERK

_____

Nos. 08-11426 & 08-13058

_____

D. C. Docket No. 07-02724-CV-BBM-1

JEANETTE C. NICHOLSON, PH.D.,
an individual,
CAREER ASSESSMENT ATLANTA, INC.,
a Georgia Corporation,

Plaintiffs-Appellants,

versus

JAMES C. SHAFE,
an individual,
CAREER TRAINING CONCEPTS, INC.,
a Georgia Corporation,
SALES AND MANAGEMENT TRAINING INSTITUTE OF
ATLANTA,
a previous Georgia Corporation,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(February 18, 2009)

Before WILSON and COX, Circuit Judges, and FAWSETT,[*] District Judge.

WILSON, Circuit Judge:

This appeal calls upon us to address the scope of the *Rooker-Feldman*[1] doctrine, which provides that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The Supreme Court has only applied the *Rooker-Feldman* doctrine as a bar to jurisdiction on two occasions, the first instance being *Rooker* and the second instance being *Feldman*. Recently, in *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280 (2005), the Supreme Court addressed the scope of the *Rooker-Feldman* doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

This case stems from a prior lawsuit in state court. In September of 2005, Appellants Jeannette C. Nicholson, Ph.D., and Career Assessment Atlanta, Inc. ("Appellants") filed a lawsuit against Appellees James C. Shafe, Career Training

[*] Honorable Patricia C. Fawsett, United States District Judge for the Middle District of Florida, sitting by designation.

[1] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1986).

2

Concepts, Inc., and Sales and Management Training Institute of Atlanta

("Appellees") in Georgia state court, seeking an accounting of profits relating to a

copyright claim under state law. Appellants lost at trial. While an appeal to the

Georgia appellate court remained pending, Appellants filed this declaratory

judgment action, requesting, *inter alia*, an accounting under federal law. The

district court dismissed the action *sua sponte* based on lack of jurisdiction,

applying the *Rooker-Feldman* doctrine, and ordered sanctions against the

Appellants. This appeal followed.

Because we find that the district court's dismissal for lack of jurisdiction

exceeded the scope of the *Rooker-Feldman* doctrine as clarified in *Exxon Mobil*,

we reverse and remand for further proceedings.

## BACKGROUND

As is typical in cases implicating the *Rooker-Feldman* doctrine, a state court

action preceded the instant federal declaratory judgment action. On September 12,

2005, the Appellants filed a "Verified Complaint and Demand for Jury Trial"

against the Appellees in the Superior Court of Gwinett County, Georgia, asserting

claims for, *inter alia*, an accounting for copyright profits under state law.[2]

---

[2] Appellants' state claim for an accounting arose from a prior copyright action in federal court. Appellant Nicholson works in the field of career assessment and counseling and Appellees create and conduct training programs. At Appellees' request, Appellant Nicholson created a set of materials for one of the Appellees' programs ("subject work"). Appellant

3

Construing the federal district court's ruling as establishing that the subject work constituted a joint work as a matter of law, the Appellants argued that they were entitled to 50% of the profits that arose from the joint work.[3]

The Appellants moved for summary judgment. The state court denied the motion, concluding that the district court's ruling in the underlying federal action, that the subject work constituted a joint work, was dicta. The state court also found that the accounting claim sounded in Georgia joint tenancy-in-common law, not federal copyright law. The case proceeded to trial and, on October 5, 2007, the jury returned a verdict in favor of the Appellees. On November 1, 2007, the Appellants filed an appeal.[4]

---

Nicholson filed a copyright registration as to a portion of the subject work. The Appellants sued the Appellees, alleging, *inter alia*, copyright infringement as to the subject work. On May 18, 2005, the federal district court entered summary judgment in favor of the Appellees, holding that the subject work constituted a "joint work." The district court reasoned that "[b]ecause [the Appellees] have a copyright interest in a portion of the work and were exercising their authority to exploit the work, [the Appellants] may not bring a copyright infringement action against [them]." *Nicholson v. Shafe*, No. 1:03-CV-3573-BBM, slip op., at 18 (N.D. Ga. May 18, 2005) (Order, *inter alia*, Granting "Defendants' Motion for Summary Judgment"). The Appellants did not appeal and the state court action followed.

[3] Upon motion by the Appellees, the Georgia state court entered a stay pending the resolution of a coverage action between the Appellees and their liability insurer. In the insurance coverage action, the state trial court found that the Appellees were not entitled to coverage and the state appellate court affirmed. *See Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 874 (Ga. App. 2007). The Appellees did not appeal.

[4] On November 10, 2008, after the filing of briefs in the instant appeal but before oral argument, the Georgia appellate court affirmed. *See Nicholson v. Shafe*, 669 S.E.2d 474 (Ga. App. 2008). On appeal, the Appellants argued that the district court's holding in the underlying federal action "that [the subject work] is a joint work" bound the state trial court under the doctrine of collateral estoppel. *Id.* at 475. Applying Georgia law, the state appellate court

4

On November 1, 2007, the same day that they appealed the jury's verdict in the state court action, the Appellants filed a "Complaint for Declaratory Judgment" against the Appellees in United States District Court for the Northern District of Georgia, alleging two causes of action: (1) declaratory judgment to establish that the Appellants and the Appellees were "equal co-owners of the subject work" and that the Appellants were entitled to an accounting; and (2) declaratory judgment to determine the applicability of federal preemption of copyright accounting matters.

On November 21, 2007, the Appellees filed a motion to dismiss, asserting res judicata, collateral estoppel, and the statute of limitations. On January 8, 2007, the Appellees filed a motion for sanctions. The Appellants responded to both motions. On March 25, 2008, the district court granted both motions. *Nicholson v. Shafe*, Civil Action File No. 1:07-CV-2724-BBM, slip. op. at 27 (N.D. Ga. March 25, 2008) (Order Granting "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted" and "Motion for Rule 11 Sanctions"). As to the motion to dismiss, the district court, recognizing its ongoing duty to inquire as to jurisdiction, *sua sponte* found that it lacked jurisdiction under the *Rooker-Feldman* doctrine. In light of its lack of jurisdiction, the district court declined to address

---

disagreed, holding "that because the federal ruling was not essential to the outcome of that case, it had no collateral estoppel effect in the present case for an accounting." *Id*. Accordingly, the Georgia appellate court found that the state trial court did not err in refusing to apply collateral estoppel to the prior ruling in the underlying federal action.

5

"whether the state court's findings are barred by res judicata or collateral estoppel in this action because it lack[ed] jurisdiction to do so." *Id.* at 11 n.5. As to the motion for sanctions, the district court found that Appellants' complaint warranted sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. As relief, the district court dismissed the Appellants' Complaint, issued an injunction against the filing of additional complaints in that court based on the same facts without first obtaining a court order, and ordered the Appellants to pay a $1,000 fine as well as attorney's fees. The Appellants appealed.

## JURISDICTIONAL QUESTION

The district court's March 25, 2008 Order granted the following relief to the Appellees: (1) dismissal of the complaint; (2) an injunction against the Appellants, enjoining them from filing future lawsuits against the Appellees in that court based on the facts underlying the case without first obtaining a court order; (3) a fine in the amount of $1,000; and (4) an order of attorney's fees in an undetermined amount. On March 26, 2008, the Appellants appealed. In response, we presented the following Jurisdictional Question to the parties, addressing only the order of attorney's fees: "Whether the district court's March 25, 2008, order is final and appealable to the extent that it awarded sanctions but directed Defendants to submit proof of their reasonable attorney fees," and, "[i]f not, whether the notice of appeal

6

is premature with respect to Plaintiffs' counsel." On May 1, 2008, the Appellants submitted their "Appellants' Statement Regarding Jurisdictional Questions," in which they assert that we retain jurisdiction over the entirety of the March 25, 2008 Order. The Appellees did not file a response.

Subsequent events to the issuance of the jurisdictional question and the Appellants' statement have rendered moot any question with respect to the jurisdictional question. On May 14, 2008, the district court quantified the amount of attorney fees and costs, ordering the Appellants to pay $9,717. In response to that order, the Appellants filed a second notice of appeal on May 28, 2008. On June 13, 2008, the Appellants filed Appellants' Motion to Consolidate Appeals, which this Court granted on August 20, 2008. Because the Appellants filed a second notice of appeal as to the May 14, 2008 Order and subsequently consolidated that appeal with the first appeal, the jurisdictional question as to the appealability of the March 25, 2008 Order as to the undetermined amount of attorney's fees and costs is now moot.

## DISCUSSION

This appeal raises two separate yet related issues: (1) the dismissal of the Appellants' case for want of jurisdiction under the *Rooker-Feldman* doctrine; and (2) the entry of sanctions against the Appellants' counsel.

7

We review dismissals for lack of subject matter jurisdiction *de novo*.

*Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006). We review a district

court's imposition of sanctions under Rule 11 and under section 1927 for an abuse

of discretion. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1188 (11th

Cir. 2006) (section 1927); *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915

(11th Cir. 2003) (Rule 11).

*A.    The Rooker-Feldman Doctrine*

Generally speaking, the *Rooker-Feldman* doctrine bars federal district courts

from reviewing state court decisions. The Supreme Court stated in *Exxon Mobil*

that the *Rooker-Feldman* doctrine "has sometimes been construed to extend far

beyond the contours of the *Rooker* and *Feldman* cases" and it should be "confined

to cases of the kind from which the doctrine acquired its name." *Exxon Mobil*, 522

U.S. at 283, 284. Thus, we begin our analysis with the *Rooker* and *Feldman* cases.

In *Rooker*, a plaintiff filed a bill of equity in federal district court seeking a

declaration that an Indiana circuit court judgment, "which was affirmed by the

Supreme Court of the state, [be] declared null and void." *Rooker*, 263 U.S. at 414.[5]

---

[5] Earlier in the same year in a case bearing the same name, the Supreme Court dismissed a "writ of error" filed by Rooker from the judgment of the Supreme Court of Indiana. *See Rooker v. Fid. Trust Co.*, 261 U.S. 114 (1923). There, the Supreme Court determined that the case did not present a question under the U.S. Constitution or federal law to sustain a basis of review and a question under the U.S. Constitution first raised on a petition for rehearing after affirmance of the judgment by the state Supreme Court "came too late." *Id.* at 117.

The plaintiff argued that the circuit court judgment contravened certain provisions of the United States Constitution. The Supreme Court determined that the federal district courts lacked jurisdiction to "entertain a proceeding to reverse or modify" a state court judgment, even if said judgment was wrong. *Id.* at 416. The jurisdiction of federal district courts, the Supreme Court explained, is "strictly original" and such courts may not exercise "appellate jurisdiction" over purported erroneous state court judgments. *Id.* Rather, Congress empowered only the Supreme Court to do so. The Supreme Court affirmed the dismissal for lack of jurisdiction.

Approximately 60 years after *Rooker*, the Supreme Court decided *Feldman*. There, two disappointed applicants to the District of Columbia bar filed separate lawsuits in the United States District Court for the District of Columbia after the District of Columbia Court of Appeals refused to waive a court rule that required District of Columbia bar applicants to have graduated from an accredited law school approved by the American Bar Association. Neither plaintiff graduated from an accredited law school. The district court determined that it lacked jurisdiction to hear their claims, but the United States Court of Appeals for the District of Columbia reversed in part, concluding that the waiver proceedings in the District of Columbia Court of Appeals were not judicial proceedings. The Supreme Court granted certiorari.

Having determined that the proceedings surrounding the plaintiffs' waiver petitions in the District of Columbia Court of Appeals were judicial in nature, the Supreme Court concluded that a federal district court has "no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482. "Review of such judgments may be had only in [the United States Supreme Court]." *Id.* The Supreme Court drew a distinction between general challenges to the constitutionality of state bar rules and challenges to state court decisions in particular cases that raise federal constitutional questions, finding that a federal district court has jurisdiction to consider the former but not the latter. *Id.* at 485-86. In other words, the Supreme Court determined that the federal district court had jurisdiction to consider the general attack on the constitutionality of the D.C. bar rule requiring graduation from an accredited law school but that it lacked jurisdiction to hear the allegations "inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny the respondents' petitions." *Id.* at 486-87.

And so the *Rooker-Feldman* doctrine, as it came to be known, was born. Underlying the analysis in *Rooker* and *Feldman* is the interpretation of two federal statutes: 28 U.S.C. § 1331 and 28 U.S.C. § 1257. First, section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising"

10

under federal law, not appellate jurisdiction. 28 U.S.C. § 1331. Second, section

1257 provides for Supreme Court review of state court judgments: "[f]inal

judgments or decrees rendered by the highest court of a State in which a decision

could be had, may be reviewed by the Supreme Court by writ of certiorari" when

certain federal questions arise. 28 U.S.C. § 1257(a). Taken together, the *Rooker-*

*Feldman* doctrine draws a "negative inference" from section 1257: "because

Congress *only* provided for review of state court judgments by the Supreme Court,

Congress therefore intended to preclude lower federal courts from exercising such

review." *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del*

*Trabajo de Puerto Rico*, 410 F.3d 17, 21 (1st Cir. 2005). *See also Dornheim v.*

*Sholes*, 430 F.3d 919, 923 (8th Cir. 2005) ("The basis for the *Rooker/Feldman*

doctrine is that, other than in the context of habeas claims, federal district courts

are courts of original jurisdiction, and by statute they are precluded from serving as

appellate courts to review state court judgments, as that appellate function is

reserved to the Supreme Court under 28 U.S.C. § 1257.").

Building on this foundation, the Eleventh Circuit set forth a four-factor test

to guide the application of the *Rooker-Feldman* doctrine, finding that it bars federal

court jurisdiction where:

> (1) the party in federal court is the same as the party in
> state court, *see Roe v. Alabama*, 43 F.3d 574, 580 (11th

11

Cir. 1995); (2) the prior state court ruling was a final or conclusive judgment on the merits, *see David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1332 (11th Cir. 2000); (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding, *see Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (per curiam); and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment, *see Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).

*Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003).[6] The district court here applied the *Amos* test, reasoning that we had applied the *Amos* factors in cases after *Exxon Mobil*, albeit only in unpublished decisions. *See Morris v. Wroble*, 206 F. App'x 915, 918 (11th Cir. 2006); *Herskowitz v. Reid*, 187 F. App'x 911, 913 (11th Cir. 2006); *Mickens v. Tenth Judicial Circuit*, 181 F. App'x 865, 872-73 (11th Cir. 2006). Neither of the parties cite to an Eleventh Circuit published decision after *Exxon Mobil* where we had occasion to apply *Amos*.[7] *See Gamble v. PinnOak Res., LLC*, 511 F. Supp. 2d

---

[6] In *Amos*, we held that the Tax Injunction Act barred plaintiff's claim. *Id.* at 1265-66. In a footnote, we also held that the *Rooker-Feldman* doctrine barred subject matter jurisdiction. *Id.* at 1266 n.11. As such, our discussion of *Rooker-Feldman* in *Amos* is not dicta. *See Bravo v. United States*, 532 F.3d 1154, 1162-63 (11th Cir. 2008) (providing "[t]hat [an] alternative holding counts because in this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings").

[7] After *Exxon Mobil*, we have mentioned *Rooker-Feldman* in a published decision on only four occasions, three of which we did so in passing. *See Reese v. Herbert*, 527 F.3d 1253, 1273 n.31 (11th Cir. 2008) (making passing reference to *Rooker-Feldman*); *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1257 n.42 (11th Cir. 2006) (declining to consider the application of the *Rooker-Feldman* doctrine); *Sibley v. Lando*, 437 F.3d 1067, 1071 n.3 (11th

12

1111, 1119 (N.D. Ala. 2007) (noting that "the Eleventh Circuit has not determined whether *Exxon Mobil* necessitates modification of the *Amos* test" but "anticipat[ing] that, in the appropriate case, the [United States] Court of Appeals [for the Eleventh Circuit] will modify the *Amos* test based on the same rationale from the Supreme Court's decision in *Exxon Mobil*"); *Madura v. Countrywide Home Loans, Inc.*, No. 8:06-cv-2073-T-24-TBM, 2007 WL 4336094, at *9 (M.D. Fla. Dec. 7, 2007) ("As of yet, the Eleventh Circuit has not published an opinion in which it has addressed the import of *Exxon Mobil* on its *Rooker-Feldman* jurisprudence. By way of its unpublished cases, the Eleventh Circuit has thus far declined to decide whether *Exxon Mobil* requires it to modify its four-part *Amos* test."). This appeal provides us with an occasion to consider the continued viability of the *Amos* test, and to clarify our precedent. We begin by considering the guidance provided in *Exxon Mobil*.

In *Exxon Mobil*, two subsidiaries of Exxon Mobil formed a joint venture with Saudi Basic Industries Corp. ("SABIC") to produce polyethylene in Saudi Arabia. A dispute arose regarding royalties charged by SABIC. Similar to our

---

Cir. 2005) (noting that, in a section 1983 action brought against state court judges involved in plaintiff's state court action regarding child support, because the plaintiff did not seek "to fix an erroneous state court judgment" but instead requested money damages, that case differed from one "where review under the *Rooker-Feldman* doctrine would be appropriate"). On the fourth occasion, we reviewed a denial of qualified immunity in a section 1983 action. *Bates v. Harvey*, 518 F.3d 1233 (11th Cir. 2008). Without any mention of the *Amos* factors, we held that the *Rooker-Feldman* doctrine did not apply. *Id.* at 1240-41.

case, Exxon Mobil involved a state action and a federal action. In July of 2000, SABIC filed a declaratory judgment action in Delaware state court, asserting that the joint venture agreements allowed the royalties. About two weeks later, Exxon Mobil and its subsidiaries filed an action in federal court, asserting that SABIC overcharged the joint ventures. In January of 2002, Exxon Mobil answered SABIC's state court complaint, asserting counterclaims mirroring their claims in federal court. In the federal action, SABIC filed a motion to dismiss, which the district court denied, and SABIC sought interlocutory appeal. Meanwhile in the state court action, in March of 2003, a jury found in favor of Exxon Mobil in the amount of $400 million. SABIC appealed. After the jury verdict in state court, the federal appellate court on interlocutory appeal raised jurisdiction *sua sponte* by way of the *Rooker-Feldman* doctrine, reasoning that Exxon Mobil's claims had been litigated in state court. The appellate court did not question subject matter jurisdiction at the outset of the suit, but rather held that federal jurisdiction terminated when the Delaware state trial court entered judgment on the jury verdict.

Noting that the *Rooker-Feldman* doctrine "has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases," the Supreme Court found that it did not apply. *Id.* at 283. The Supreme Court held that the

14

*Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. Drawing on the facts of *Rooker* and *Feldman*, the Supreme Court delineated the scope of the *Rooker-Feldman* doctrine: when the "the losing party in state court file[s] suit in federal court after the state proceedings end[], complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* at 291. The Court noted that parallel state and federal litigation does not trigger the *Rooker-Feldman* doctrine "simply by the entry of judgment in state court." *Id.* at 292. Rather, preclusion law would govern the federal action once the state court adjudication was complete. The Supreme Court further noted that *Rooker-Feldman* does not prohibit a "district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. Turning back to the facts, the Supreme Court concluded that the *Rooker-Feldman* doctrine "did not prevent the District Court from exercising jurisdiction when ExxonMobil filed the federal action, and it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the Delaware courts." *Id.* at 294.

15

The Appellees argue that *Exxon Mobil* does not apply here because the plaintiff in *Exxon Mobil* filed the federal court action *before* the jury verdict in the state court action and the Appellants here filed the federal action *after* the jury verdict in the state court action. In the Appellees' words, "in order to fall within the scope of *Exxon Mobil*, [the Appellants] should have filed their federal complaint before judgment was entered in the state court action." Yet, nothing in *Exxon Mobil* indicates that the Supreme Court intended to limit its holding to its facts. Instead, *Exxon Mobil* clarified the scope of the *Rooker-Feldman* doctrine by returning it to its roots, the facts of the *Rooker* and *Feldman* cases. In doing so, *Exxon Mobil* casts doubt on the continued viability of the *Amos* test. *See United States v. Mendez*, 528 F.3d 811, 817 n.3 (11th Cir. 2008) ("When a prior panel decision conflicts with a subsequent Supreme Court decision, we must depart from the prior panel precedent and follow the Supreme Court decision."). Rather than apply *Amos*, we adhere to the language in *Exxon Mobil*, delineating the boundaries of the *Rooker-Feldman* doctrine: "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.[8] Because the Appellants commenced

---

[8] The Second Circuit broke down the holding of *Exxon Mobil* into four requirements:

16

the federal district court action before the end of state proceedings in Georgia, we find that the *Rooker-Feldman* doctrine does not apply here. We now turn to the end-of-state-proceedings inquiry.

*Exxon Mobil* made it clear that the state court must have rendered judgment before the district court proceedings commenced. In explaining the scope of *Rooker-Feldman*, *Exxon Mobil* clarified that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name." *Exxon Mobil*, 544 U.S. at 284. In saying so, the Supreme Court limited the *Rooker-Feldman* doctrine to its roots – the unique facts of the *Rooker* and *Feldman* cases: "[i]n both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil*, 544 U.S. at 291.

---

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain of injuries caused by a state-court judgment." Third, the plaintiff must "invite district court review and rejection of that judgment." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and footnote omitted). We decline to break down *Exxon Mobil's* holding into factors or requirements; rather, we will apply the language as is.

*Exxon Mobil* clarified that the federal action must be filed after the state proceedings have ended, which, in turn, begs the question: when have state proceedings ended? In particular, we must address whether the entry of judgment on a jury verdict in a state trial court pending appeal marks the end of state proceedings for purposes of the *Rooker-Feldman* doctrine. Save its reference to the facts of the *Rooker* and *Feldman* cases as guidance, *Exxon Mobil* provides little direction concerning when state proceedings end. Post-*Exxon Mobil*, we have not yet addressed when a state proceeding ends for purposes of *Rooker-Feldman*. But, two of our sister circuits provide useful guidance.

First, in *Federacion*, the First Circuit addressed whether the *Rooker-Feldman* doctrine applies to an interlocutory jurisdictional decision of the Puerto Rico appellate courts. The First Circuit noted that, under *Exxon Mobil*, a state court is "sufficiently final" when "state proceedings [have] ended." *Federacion*, 410 F.3d at 24 (citing *ExxonMobil*, 544 U.S. at 291). As such, *Rooker-Feldman* will not bar subject matter jurisdiction where a plaintiff initiates the federal lawsuit before the state court proceedings have ended. "Generally speaking," the First Circuit found that state proceedings have "ended" in three situations: (1) "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved," (2) "if the state

18

action has reached a point where neither party seeks further action," and (3) "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." *Id.* at 24-25. While neither the first nor the third situations apply here, the second situation implies that a state proceeding has not ended when a state court loser seeks "further action," such as an appeal.[9] The First Circuit elaborated on the second scenario, opining that "if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended." *Id.* at 24. Conversely, logic dictates that if a state court issues a judgment and the losing party (here, the Appellants) does not allow the time for appeal to expire (but instead, files an appeal), then the state proceedings have not ended. *See id.* at 27 n.13 ("While the state court judgment is pending on appeal, it carries preclusive effect, but (in most cases) the state proceedings have not yet 'ended.'").

Second, in *Dornheim*, the Eighth Circuit applied *Exxon Mobil* and *Federacion* to facts chronologically indistinguishable from the instant case. In

---

[9] The Court in *Federacion* recognized that, in the second scenario, the state court judgment would not constitute a final judgment from "the highest court of a State in which a decision could be had" under section 1257; "[n]evertheless-and this is what matters-it qualifies under *Exxon Mobil's* 'ended' test." *Federacion*, 410 F.3d at 24; *see id.* at 26 ("And we hasten to repeat that a proceeding may have 'ended' under *Exxon Mobil* even when § 1257 jurisdiction would not have been available.").

*Dornheim*, a mother filed a federal civil rights lawsuit against various state actors involved in her state court custody dispute with her ex-husband and juvenile deprivation proceeding. The state court issued judgments on August 13, 2003 (divorce) and August 26, 2003 (juvenile deprivation). The mother appealed both state court rulings to the Supreme Court of North Dakota, which affirmed the lower court judgment in each appeal on June 30, 2004. The mother, however, had commenced her civil rights action in federal court nearly a year before the state Supreme Court ruled, specifically on August 13, 2003. Therefore, according to the Eighth Circuit, "[a]t the time that [the plaintiffs] commenced this federal action, the state court adjudication was not complete" insofar as the appeal remained pending before the Supreme Court of North Dakota. *Dornheim*, 430 F.3d at 924.

Applied here, the chronology of significant dates is as follows: the jury in the state court action returned its verdict on October 5, 2007; the Appellants filed the instant federal action and the Appellants appealed the jury verdict in the state court action on November 1, 2007; and the Georgia appellate court affirmed the state trial court's rulings on November 10, 2008, nearly one year after the commencement of the federal proceedings. As such, because an appeal remained pending in the state court action at the time the Appellants filed the instant case, the state court proceedings had not ended for purposes of *Rooker-Feldman* as

20

clarified by *Exxon Mobil*.

While the district court acknowledged *Federacion* and *Dornheim*, it was persuaded by another line of cases, holding generally that *Rooker-Feldman* applies to state court trial judgments. First, the district court relied on our precedent from a pre-*Exxon Mobil* case. In *Powell v. Powell*, 80 F.3d 464 (11th Cir. 1996), in response to a state trial court decree awarding part of Eugene Powell's naval retirement pay to his wife as alimony in a divorce proceeding, Powell filed an action in federal court contending that the federal statute (which applies community property and equitable distribution principles to military retirement pay) violated the Takings Clause of the Fifth Amendment as applied to him. We found that the *Rooker-Feldman* doctrine applied and, of particular relevance here, the court determined that "[a] litigant may not escape application of the doctrine by merely electing not to appeal an adverse state trial court judgment." *Powell*, 80 F.3d at 467.

The district court determined that *Powell* "weighs in favor of applying *Rooker-Feldman* [to state trial court judgments]." *Nicholson v. Shafe*, No. 1:07-CV-2724, at *14. After *Exxon Mobil*, however, the relevant inquiry is not whether the *Rooker-Feldman* doctrine applies to state trial court judgments but whether the entry of judgment in a state trial court marks the end of state proceedings for

21

purposes of *Rooker-Feldman*. In our view, *Powell* cuts against the application of the *Rooker-Feldman* doctrine in a case where an appeal is pending. *Powell* stands for the proposition that the *Rooker-Feldman* doctrine applies where the state court loser declines to appeal an adverse state trial court judgment in line with the reasoning espoused in *Federacion* and *Dornheim*. *See Powell*, 80 F.3d at 467. *Powell* implies that the *Rooker-Feldman* doctrine does not apply where a state court loser has appealed to the state appellate court.

Next, the district court relied on two cases from the Ninth and Sixth Circuits. First, in *Confederated Tribes of the Colville Reservation v. Superior Court of Okanogan County*, 945 F.2d 1138, 1141 (9th Cir. 1991), the Ninth Circuit found that the *Rooker-Feldman* doctrine applies where a party sought a declaratory judgment from "a federal district court that a state court's interpretation of a federal statute was unlawful, before the intermediate and highest appellate courts of Washington have had the opportunity to review that decision." Second, in *Pieper v. American Arbitration Association, Inc.*, 336 F.3d 458, 462 (6th Cir. 2003), the Sixth Circuit concluded that the "*Rooker-Feldman* doctrine does apply to interlocutory orders and to orders of lower state courts." Comparing *Federacion* and *Dornheim* with *Confederated Tribes* and *Pieper*, the district court implies that a circuit split exists on the issue of when state proceedings end for purposes of

22

*Rooker-Feldman*, in particular "where a state trial court had issued a judgment but the state appeals court had not." *Nicholson v. Shafe*, No. 1:07-CV-2724-BBM, slip op. at 14. However, we find that no such split exists. *Confederated Tribes* and *Pieper* were decided before the Supreme Court clarified the scope of the *Rooker-Feldman* doctrine in *Exxon Mobil* in 2005. Hence, the Ninth and Sixth Circuits lacked the benefit of the analysis in *Exxon Mobil*, in which the Supreme Court "confined" the application of the *Rooker-Feldman* doctrine to cases resembling *Rooker* and *Feldman* where the "state proceedings [have] ended." *Exxon Mobil*, 544 U.S. at 284, 291. Neither *Confederated Tribes* nor *Pieper* contain any analysis of that inquiry. *Federacion* and *Dornheim*, on the other hand, addressed when state proceedings end for purposes of *Rooker-Feldman*, the precise issue before us. The persuasive value of *Confederated Tribes* and *Pieper* is uncertain, at best.[10]

Third, the district court relies on one post-*Exxon Mobil* case. In *Field Auto City, Inc. v. General Motors Corp.*, 476 F. Supp. 2d 545 (E.D. Va. 2007), a state trial court entered judgment on May 19, 2006 and, while an appeal remained pending to the Supreme Court of Virginia, the plaintiff (who received the adverse

---

[10] The district court also cited two additional pre-*Exxon Mobil* cases applying *Rooker-Feldman* to interlocutory orders: *Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir. 1996) and *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 199 (4th Cir. 2000). Because our case involved a judgment as opposed to an interlocutory order, neither case is relevant. Further, they were decided before *Exxon Mobil*.

23

judgment in state court) filed an action in federal court. Six days later, the Supreme Court of Virginia rejected the plaintiff's appeal. The federal court framed the issue this way: "which of the two decisions governs with respect to *Rooker-Feldman* and if the Supreme Court of Virginia's decision governs, does *Rooker-Feldman*, although not initially applicable at the time the federal suit is filed, nonetheless operate to bar jurisdiction once the Supreme Court of Virginia's decision becomes final." *Id.* at 552. Finding that the state trial court judgment governs, the district court determined that "there is no sound reason to preclude the operation of *Rooker-Feldman* where a state trial court has rendered judgment, but state appeals are not yet complete when the federal action is filed." *Id.* at 553. We disagree. We do not hold that the *Rooker-Feldman* doctrine cannot apply to state trial court judgments or state appellate court judgments. Rather, bringing us in line with *Exxon Mobil*, the relevant inquiry is whether the state court proceedings have ended and, at the time the Appellants filed this federal action, we find that they had not.[11]

---

[11] A narrower interpretation of *Exxon Mobil* would limit the application of the *Rooker-Feldman* doctrine to federal cases filed after the state court loser exhausted his or her avenues of appeal in state court, akin to the facts in *Rooker* and *Feldman*. After all, *Exxon Mobil* confined the *Rooker-Feldman* doctrine to cases with facts similar to that of *Rooker* and *Feldman*. *Exxon Mobil*, 544 U.S. at 284. For example, if a state court loser declines to appeal an adverse state trial court judgment or state appellate court judgment and then files a federal lawsuit requesting review and rejection of the same, under the narrower reading, *Rooker-Feldman* would not apply, even though state proceedings have ended. Such a narrow reading, however, obviates *Exxon Mobil's* requirement that "state proceedings" have ended insofar as state proceedings can end

Our analysis finds additional support in the Tenth Circuit. In *Guttman*, having lost his medical license before a state board, Stuart T. Guttman, M.D., appealed to state court, claiming that the state board's decision violated his rights under Title II of the Americans with Disabilities Act ("ADA"). The state court denied his appeal and refused to consider his Title II claim. He appealed to the New Mexico Court of Appeals, which denied his appeal on April 10, 2003. Guttman then filed a petition for certiorari to the New Mexico Supreme Court, but on April 17, 2003, before the New Mexico Supreme Court acted, he filed a cause of action in federal district court, alleging violations of Title II of the ADA and violations of his procedural due process rights under 42 U.S.C. § 1983. The New Mexico Supreme Court denied his petition for certiorari about one month later, on May 16, 2003. The federal district court dismissed his claims under *Rooker-*

---

without a party seeking review in the highest court of that state. *See Federacion*, 410 F.3d at 24-25. In our view, a better reading of *Exxon Mobil* is that *Rooker-Feldman* may apply to state trial court judgments or state appellate court judgments *if the state proceedings have ended. See Exxon Mobil*, 544 U.S. at 291. Nonetheless here, because we find that the state proceedings have not ended at the time of the filing of the federal complaint, we need not hold whether *Rooker-Feldman* applies to state trial judgments or state appellate court judgments when state proceedings have ended. *But see Powell*, 80 F.3d at 467 (providing that, in a pre-*Exxon Mobil* case, "the [*Rooker-Feldman*] doctrine is not limited to state appellate court judgments. A litigant may not escape application of the doctrine by merely electing not to appeal an adverse state trial court judgment"); *Bear v. Patton*, 451 F.3d 639, 642-643 (8th Cir. 2006) (finding that the *Rooker-Feldman* doctrine applies where a state court loser allows the time to appeal to expire from a lower state court judgment but remanding to the district court to address it in the first instance).

*Feldman*.[12]

On remand from the Supreme Court, the Tenth Circuit concluded that because Guttman filed his federal suit while his petition for certiorari to the New Mexico Supreme Court remained pending, "[h]is state suit was not final." *Guttman*, 446 F.3d at 1032; *see id.* at 1029 (providing that "[u]nder *Exxon Mobil*, it is clear that the district court does have subject matter jurisdiction to hear the case because, although Guttman filed his claim after it was resolved by a New Mexico court, it was filed before the end of the state courts' appeal process," one month before the state supreme court denied a petition for certiorari). Consequently, *Rooker-Feldman* did not apply.

Similarly here, because the Appellants filed the instant federal action while the state court action continued in the appeals process in state court, the state proceedings had not ended. This narrow construction of the *Rooker-Feldman* doctrine follows the lead of the Supreme Court. *See Exxon Mobil*, 544 U.S. at 291 (providing that the *Rooker-Feldman* doctrine precludes a federal district court from exercising subject matter jurisdiction in "limited circumstances"). The *Rooker-Feldman* doctrine does not "supplant" preclusion law or "augment" other doctrines related to deference to state court actions. *Id.* at 284. Rather, "[d]isposition of the

---

[12] The Tenth Circuit initially affirmed but the Supreme Court vacated that decision and remanded it back to the Tenth Circuit in light of *Exxon Mobil*.

federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Exxon Mobil*, 544 U.S. at 293.

In *Exxon Mobil*, a unanimous Supreme Court warned the lower courts that we have extended *Rooker-Feldman* "far beyond the contours of the *Rooker* and *Feldman* cases. . . ." *Id.* at 283. Our decision here, confining the scope of the *Rooker-Feldman* doctrine to instances where the state proceedings have ended, in line with both the *Rooker* and *Feldman* cases, heeds that warning. A year after *Exxon Mobil*, the Supreme Court referred to it as a "limited doctrine." *See Lance*, 546 U.S. at 464 ("Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule."). After all, "[s]ince *Feldman*, [the Supreme Court] has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction." *Exxon Mobil*, 544 U.S. at 287.

In conclusion, we agree with our sister circuits (the First, Eighth and Tenth Circuits) and hold that state proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that complains of injuries caused by the state court judgment and invites review and rejection of that

judgment. At the time of the filing of this action, the state proceeding in the Georgia courts had not ended but remained pending on appeal and therefore *Rooker-Feldman* did not divest the United States District Court for the Northern District of Georgia of jurisdiction.[13]

B.  *Sanctions*

After dismissing the Appellants' claims for want of jurisdiction, the district court imposed sanctions against the Appellants' counsel pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, stating that: (1) "there is no legal theory on which [the Appellants] had a reasonable possibility of success" given the application of the *Rooker-Feldman* doctrine; and (2) assuming *arguendo* that *Rooker-Feldman* did not apply, the Appellants' claims "would clearly be barred by res judicata and collateral estoppel." *Nicholson v. Shafe*, No. 1:07-CV-2724-BBM, slip op. at 19-21. Considering *Exxon Mobil* and our finding that *Rooker-Feldman*

---

[13] We note that the fact that the Georgia appellate court affirmed *after* the filing of the federal action does not "vanquish jurisdiction" in the federal court. *Exxon Mobil*, 544 U.S. at 294; *see id.* at 292 (providing that "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court"). In other words, the *Rooker-Feldman* doctrine cannot spring into action and vanquish properly invoked subject matter jurisdiction in federal court when state proceedings subsequently end.

In addition, while the Appellees raised collateral estoppel, res judicata, and the statute of limitations as defenses and do so again on appeal, the district court did not address them in relation to *Rooker-Feldman*. *See Nicholson v. Shafe*, No. 1:07-CV-2724-BBM, slip op. at 11 n.5, 17-18. We will not address an issue that has not been decided by the trial court. *Baumann v. Savers Federal Sav. & Loan Ass'n*, 934 F.2d 1506, 1512 (11th Cir. 1991). We will give the district court the opportunity to consider these arguments in the first instance.

does not apply here, we cannot say the same with respect to Appellants' claims.

Furthermore, while we do not condone a decision to file a complaint in federal court as an "insurance policy," the Supreme Court in *Exxon Mobil* made it clear that "[t]here is nothing necessarily inappropriate . . . about filing a protective action." *Exxon Mobil*, 544 U.S. at 294 n.9.

We also disagree with the district court's alternative rationale for imposing sanctions. The application of res judicata in this case depends, in large part, on whether the state court claims were part of the same "nucleus of operative fact" as the federal court claims and therefore constitute "the same cause of action." *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269 (11th Cir. 2002). Though we do not express an opinion as to how the district court should ultimately rule on this issue, we note that the state trial court's distinction between an accounting brought under Georgia law and a federal copyright accounting makes it at least arguable whether the state court claims are the same as the Appellants' federal court claims. Likewise, the application of collateral estoppel depends on the perhaps even closer question of whether the issues raised in the federal action were actually litigated and decided in state court. *See CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003). The district court's ruling contained little analysis on these issues, and it abused its discretion

by simply assuming that the two doctrines would apply if it had subject matter jurisdiction over the case.

Accordingly, we reverse the district court's imposition of sanctions.[14]

## CONCLUSION

We hold that, in light of *Exxon Mobil*, state proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from a state court judgment remains pending in state court at the time that the state court loser commences the federal court action. Therefore, we reverse the district court's dismissal of the Appellants' case for lack of subject matter jurisdiction by way of the *Rooker-Feldman* doctrine. We also reverse the district court's imposition of sanctions against the Appellants' counsel, and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

[14] In vacating the award of sanctions, we do not express any opinion as to (1) the merits of the Appellants' claims or (2) the possibility that preclusion law may apply.