[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11774
Non-Argument Calendar
_____

D.C. Docket Nos. 0:16-cv-61582-CMA; 16-bkc-01154-RBR

In Re: BERESFORD BRYAN BERTRAM,
  THERESA BERTRAM,

                 Debtors.
_____

BERESFORD BRYAN BERTRAM,
THERESA BERTRAM,

             Plaintiffs - Appellants,

versus

HSBC MORTGAGE SERVICES, INC.,

           Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 5, 2018)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

This appeal primarily presents an issue about the scope of the *Rooker-Feldman* doctrine, which bars a plaintiff from challenging in federal court the validity of a state court judgment. Defendant HSBC Mortgage Services, Inc., ("HMSI") filed a foreclosure action in Broward County Circuit Court related to real property owned by plaintiffs Beresford and Theresa Bertram. After the state court entered a final judgment in favor of HMSI, Beresford petitioned for Chapter 7 bankruptcy. In an adversary proceeding in bankruptcy court, the Bertrams sued HMSI, claiming that the foreclosure judgment was invalid because the debt they owed HMSI was unsecured and, alternatively, that even if HMSI had properly foreclosed on the mortgage, the subsequent sale of their property was improper.

HMSI moved to dismiss the Bertrams' complaint, arguing that the bankruptcy court lacked subject matter jurisdiction because the *Rooker-Feldman* doctrine barred their claims. The bankruptcy court agreed with HMSI and dismissed the complaint. The district court affirmed the bankruptcy court's judgment.

We agree that the *Rooker-Feldman* doctrine bars the Bertrams' claims challenging the validity of the state court's foreclosure judgment. But the *Rooker-Feldman* doctrine does not bar the Bertrams' claims challenging the foreclosure

2

sale, which were not actually raised or inextricably intertwined with the issues resolved in the state court's final judgment. We thus affirm in part and reverse in part.

## I.    FACTUAL BACKGROUND

The Bertrams owned property in Broward County, Florida, secured by a mortgage. When the Bertrams defaulted on the mortgage, HMSI filed an action in state court seeking to foreclose on the mortgage. The trial court granted summary judgment to HMSI and entered a final judgment in its favor foreclosing the mortgage (the "final foreclosure judgment"). The Bertrams did not appeal the final foreclosure judgment.

Instead, the Bertrams filed in the trial court a motion to aside the final foreclosure judgment, which was denied. After their motion was denied, the Bertrams filed an interlocutory appeal with Florida's Fourth District Court of Appeal. While the appeal was pending, a foreclosure sale of the property moved forward. The sale was scheduled, and the Clerk of Court for Broward County purported to sell the property. A few days after the sale, the Bertrams filed in the trial court an objection to the foreclosure sale. In their objection, the Bertrams requested that the trial court invalidate the final foreclosure judgment it had previously entered in favor of HMSI. They also alleged that HMSI failed to follow proper procedures in conducting the foreclosure sale. After a hearing, the trial

3

court overruled the Bertrams' objection and directed the Clerk to issue a certificate of title and writ of possession.

Shortly after the sale, the Fourth District Court of Appeal affirmed the trial court's earlier order denying the Bertrams' motion to set aside the final judgment. The Bertrams did not appeal the decision to the Florida Supreme Court. Instead, they filed another interlocutory appeal with the Fourth District Court of Appeal— this time seeking review of the trial court's order overruling their objection to the foreclosure sale. The Fourth District Court of Appeal affirmed the trial court. Under the rules of Florida's appellate courts, the mandate from the Fourth District Court of Appeal would issue 15 days after the decision. *See* Fla. R. App. P. 9.340(a). Because the decision was released on October 22, 2015, the mandate was set to issue on November 6, 2015. But, on November 4, Beresford filed a Chapter 7 bankruptcy petition. The Florida appellate court then stayed issuance of the mandate pending resolution of Beresford's bankruptcy.

After the bankruptcy court entered an order granting Beresford a discharge, the Bertrams commenced a *pro se* adversary proceeding against HMSI. In the adversary proceeding, the Bertrams brought claims challenging the validity of the final foreclosure judgment and the subsequent sale of the property. The Bertrams alleged that the sale of the property was invalid because, among other reasons,

HMSI allegedly had transferred its interest in the property to another entity after the final foreclosure judgment was entered but before the sale was completed.

HMSI moved to dismiss the Bertrams' complaint, claiming that the *Rooker-Feldman* doctrine barred the action. HMSI attached to its motion a certificate of service indicating that it had "filed" the motion "via CM/ECF." Doc. 11-2 at 341.[1] The certificate included a "service list" for the motion that listed the Bertrams' address as well as an email address but did not identify how HMSI had served the Bertrams. *Id.* The Bertrams admit that they received a copy of the motion via email.

The bankruptcy court then noticed a hearing on the motion to dismiss and directed HMSI to serve a copy of the notice on the Bertrams. HMSI filed a certificate of service indicating that it had served the Bertrams with a copy of the notice setting the hearing via Federal Express and email.

Beresford appeared at the hearing on the motion to dismiss but claimed that he had received no notice of the hearing and only happened to learn of it when he asked the clerk's office about the status of HMSI's motion to dismiss. To give the Bertrams time to prepare, the bankruptcy court rescheduled the hearing on the motion to dismiss. The Bertrams subsequently filed their opposition to the motion to dismiss.

---

[1] All citations in the form "Doc. #" refer to the district court docket entries.

5

The Bertrams then filed a motion to strike the certificate of service attached to HMSI's motion to dismiss as well as the certificate showing that HMSI had notified them of the original hearing on the motion to dismiss. They asserted that the certificate of service attached to the motion to dismiss was insufficient because it failed to identify how HMSI had served them. The Bertrams also challenged the accuracy of the certificate of service for the notice of hearing. And they contended that their address on both certificates of service was incorrect because the wrong zip code was listed. Because HMSI had failed to effectuate proper service, the Bertrams asked the bankruptcy court not to consider HMSI's motion to dismiss.

The bankruptcy court held a hearing on the motions to strike and to dismiss. The court denied the motion to strike because the Bertrams admitted they received a copy of the motion to dismiss via email and had adequate time to prepare for the hearing. The court granted the motion to dismiss, concluding that the Bertrams' claims were, in effect, challenging the validity of a state court judgment and barred by the *Rooker-Feldman* doctrine.

The Bertrams appealed the bankruptcy court's order denying the motion to strike and granting the motion to dismiss to the district court. The district court affirmed the bankruptcy court. This is the Bertrams' appeal from the district court's decision.

6

## II.    STANDARD OF REVIEW

When we review an order of a district court entered in its role as an appellate court reviewing a bankruptcy court's decision, we "independently examine[] the factual and legal determinations of the bankruptcy court, applying the same standards of review as the district court." *In re FFS Data, Inc.*, 776 F.3d 1299, 1303 (11th Cir. 2015). We review *de novo* determinations of law whether from the bankruptcy court or district court, and we review a bankruptcy court's factual findings under a clearly erroneous standard. *See In re Bilzerian*, 100 F.3d 886, 889 (11th Cir. 1996). We further review *de novo* a bankruptcy court's application of the *Rooker-Feldman* doctrine. *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1069 (11th Cir. 2013). And we review for abuse of discretion the bankruptcy court's denial of a motion to strike. *See Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1337 (11th Cir. 2000).

## III.    DISCUSSION

The Bertrams contend that the bankruptcy court erred in denying their motion to strike and granting HMSI's motion to dismiss. We address these arguments in turn.

### A.    The Motion to Strike

The Bertrams argue that the bankruptcy court erred when it denied their motion to strike. They contend that they were never properly served with a copy

of the motion to dismiss or given notice of the first hearing and that they were denied due process.

Before we can address this issue, we must consider whether we have jurisdiction to review it.  HMSI argues that we lack jurisdiction to review the bankruptcy court's order denying the motion to strike because it was a non-final order.  "A court of appeals has jurisdiction over only final judgments and orders arising from a bankruptcy proceeding, whereas the district court may review interlocutory judgments and orders as well."  *In re Donovan*, 532 F.3d 1134, 1136 (11th Cir. 2008); *see* 28 U.S.C. § 158(a), (d).   A bankruptcy court order is final if it "completely resolve[s] all of the issues pertaining to a discrete claim."  *Donovan*, 532 F.3d at 1137 (internal quotation marks omitted).  HMSI reasons that because the bankruptcy court's order denying the motion to strike was not a final order, we may not review it.

Even if the bankruptcy court's order denying the motion to strike was not final on its own, we conclude that we have jurisdiction because the bankruptcy court entered a final order when it granted HMSI's motion to dismiss, which completely resolved all of the issues pertaining to the Bertrams' claims in the adversary proceeding.  We have recognized, outside the bankruptcy context, that "review of the final judgment opens for consideration the prior interlocutory orders."  *Barfield v. Brierton*, 883 F.2d 923, 931 (11th Cir. 1989).  Put differently,

8

"the doctrine of cumulative finality allows an appeal from a non-final order to be 'saved' by subsequent events that establish finality." *In re Rimstat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000). And we have applied the doctrine of cumulative finality in the bankruptcy context. *See In re Valone*, 784 F.3d 1398, 1401 (11th Cir. 2015) (concluding that we had jurisdiction to review bankruptcy court order disallowing an exemption, even though the order was not final, because the bankruptcy court had subsequently confirmed the Chapter 13 plan and thus entered a final order). Applying the doctrine of cumulative finality, we conclude that we have jurisdiction to review the order denying the motion to strike.

Turning now to the merits of the Bertrams' arguments regarding the motion to strike, we cannot say that the bankruptcy court abused its discretion. We assume for purposes of this appeal that the certificate of service attached to HMSI's motion to dismiss did not strictly comply with the bankruptcy court's local rules because it failed to identify how HMSI had served the Bertrams. *See* Bankr. S.D. Fla. L.R. 2002-1(F), 9013-3. We also assume for purposes of this appeal that HMSI failed to properly serve the Bertrams with the notice about the first hearing. *See* Bankr. S.D. Fla. L.R. 9073-1(B). We acknowledge that the bankruptcy court had discretion to impose sanctions for HMSI's failure to comply with the local rules. *See* Bankr. S.D. Fla. L.R. 1001-1(D). But we disagree that the court abused its discretion in declining to impose sanctions here, given that the Bertrams

9

actually received a copy of the motion to dismiss from HMSI via email and had sufficient time to prepare for the hearing.

The Bertrams nevertheless contend that the lack of proper service denied them due process. Again, we disagree. Procedural due process guarantees a person notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). We see no due process violation here. Even if HMSI's certificates of service were technically deficient, the Bertrams admit that they actually received a copy of the motion to dismiss, meaning they received actual notice. Although the Bertrams contend that they failed to receive adequate notice of the first hearing on the motion to dismiss, they were not prejudiced because the bankruptcy court rescheduled the hearing. At the subsequent hearing, the Bertrams confirmed they had had adequate time to prepare and were able to present oral argument. The bankruptcy court did not violate the Bertrams' due process rights given that they actually received a copy of HMSI's motion to dismiss when it was filed, had the opportunity to submit a written opposition to the motion, and were heard on the merits.

**B.     The Motion to Dismiss**

We now turn to the bankruptcy court's decision to dismiss the Bertrams' claims based on the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine

10

takes its name from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  These decisions collectively hold that a federal district court may not review and reverse a state court civil judgment, because only the United States Supreme Court has appellate jurisdiction over judgments of state courts in civil cases.  *See* 28 U.S.C. § 1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).

The *Rooker-Feldman* bars litigation in federal court of claims that were actually raised in the state court and those "inextricably intertwined" with the state court judgment.  *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).  "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues."  *Id.* (internal quotation marks and citation omitted).  The doctrine does not apply, however, where "the plaintiff had no reasonable opportunity to raise his federal claim in state proceedings."  *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) (internal quotation marks omitted).  We have explained that "[a] claim about conduct occurring after a state court decision cannot be either the same claim or one 'inextricably intertwined' with that state court decision, and thus cannot be barred under *Rooker-Feldman*."  *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1286 (11th Cir. 2018).

11

The Supreme Court has cautioned that the scope of the *Rooker-Feldman* doctrine is narrow and "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. The doctrine is inapplicable if the federal action was commenced *before* the state proceedings ended. *Nicholson v. Shafe*, 558 F.3d 1266, 1274-75 (11th Cir. 2009). State proceedings end, for purposes of the *Rooker-Feldman* doctrine when: (1) "the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved," (2) "the state action has reached a point where neither party seeks further action," or (3) "the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." *Id.* at 1275 (internal quotation marks omitted). As to the second scenario, a state proceeding ends when the losing party allows the time for appeal to expire. *Id.* Conversely, state proceedings remain pending when "the losing party . . . does not allow the time for appeal to expire (but instead, files an appeal)." *Id.* It follows that state proceedings have not ended if an appeal from the state court judgment remains pending at the time that the plaintiff files the federal case. In this circumstance, if the state appellate court affirms the lower court's

judgment *after* the federal case is filed, the federal court retains jurisdiction. *Id.* at 1279 n.13.

This case does not fit completely the *Rooker–Feldman* mold. We agree with the bankruptcy court and district court that the *Rooker-Feldman* doctrine barred the Bertrams' claims that sought to invalidate the state court's final foreclosure judgment. The state proceedings related to the final foreclosure judgment ended for purposes of the *Rooker-Feldman* doctrine when the state trial court entered the judgment and the Bertrams did not appeal, which was years before the Bertrams filed their adversary proceeding in the bankruptcy court. *See id.* at 1275. Because the state court proceedings as to the final foreclosure judgment had ended when the adversary proceeding complaint was filed, the Bertrams could not sue in federal court to invalidate that judgment. *See id.* at 1274-75.

The *Rooker-Feldman* doctrine does not bar all of the Bertrams' claims, however. A close reading of their complaint shows that some of the Bertrams' claims arose out of HMSI's conduct with regard to the foreclosure sale. Because these claims are about conduct that occurred after the final foreclosure judgment was entered and the time for appeal expired, they cannot be barred under the *Rooker-Feldman* doctrine. *See Target Media Partners*, 881 F.3d at 1286.

We acknowledge that the Bertrams also litigated issues related to the foreclosure sale in state court when they filed an objection to the foreclosure sale.

13

At the time that the Bertrams brought the adversary proceeding, the state court had overruled their objection and the Fourth District Court of Appeal had affirmed the trial court. But the Fourth District Court of Appeal had not yet issued the mandate. Because the mandate had not issued, the state action had not yet reached a point where neither party sought further action, meaning the state court litigation challenging the foreclosure sale had not yet ended. *See Nicholson*, 558 F.3d at 1275. It is true that this litigation was pending when the Fourth District Court of Appeal issued its mandate, bringing an end to the state court litigation challenging the foreclosure sale. The *Rooker-Feldman* doctrine does not bar the Bertrams' claims challenging the foreclosure sale because the doctrine "cannot spring into action and vanquish properly invoked subject matter jurisdiction in federal court when state proceedings subsequently end." *Id.* at 1275 n.13.

The Bertrams nonetheless urge us to conclude that the bankruptcy court erred in applying the *Rooker-Feldman* doctrine because, they contend, the debt they owed to HMSI was discharged in Beresford's Chapter 7 case. This argument rests on the premise that the debt the Bertrams owed to HMSI was unsecured. The problem is that in raising this argument the Bertrams seek to nullify the state court's final foreclosure judgment, which necessarily involved a determination that HMSI had a valid mortgage on the property. The *Rooker-Feldman* doctrine bars this attempt to relitigate issues that were decided by the state court. *See Casale*,

14

558 F.3d at 1260. Because we must accept that the Bertrams' debt to HMSI was secured by a mortgage interest, we reject the Bertrams' argument that the bankruptcy court's Chapter 7 discharge extinguished HMSI's right to foreclose on the mortgage debt. *See Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991) (recognizing that a Chapter 7 discharge extinguishes only the debtor's personal liability on the debt, not the right to foreclose on the mortgage).

The Bertrams also argue that the bankruptcy court erred in relying on the *Rooker-Feldman* doctrine because a bankruptcy court is authorized to abstain from hearing a case only when abstention is authorized under 28 U.S.C. § 1334(c). This provision states that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). We reject the Bertrams' interpretation because nothing in this provision bars a bankruptcy court from abstaining from hearing a particular proceeding under the *Rooker-Feldman* doctrine.[2]

---

[2] The Bertrams raise a litany of other arguments about why the bankruptcy court erred in granting the motion to dismiss. All of these arguments lack merit. For example, they argue that HMSI's motion to dismiss constituted a non-core matter, meaning the bankruptcy court had to issue proposed findings of fact and conclusions on law on the motion to dismiss. Because the bankruptcy court instead issued an order granting the motion to dismiss, the Bertrams argue that we must vacate. But the Bertrams conceded in the bankruptcy court that their adversary complaint raised a core proceeding. It was thus appropriate for the bankruptcy court to follow the procedures that apply to core proceedings in deciding the motion to dismiss.

We thus conclude that the *Rooker-Feldman* doctrine bars some but not all of the Bertrams' claims.  We emphasize that our opinion today addresses only the applicability of the *Rooker-Feldman* doctrine, not whether HMSI has other defenses to the Bertrams' claims, and we offer no opinion about whether the Bertrams' claims will ultimately succeed on the merits.

## IV.    CONCLUSION

We hold that the *Rooker-Feldman* doctrine barred only the Bertrams' claims related to whether HMSI could foreclose on the mortgage, not their claims related to HMSI's conduct when the property later was sold.  We thus affirm the district court's order affirming the bankruptcy court's dismissal of the Bertrams' claims challenging the final foreclosure judgment.  But we reverse the district court's order affirming the bankruptcy court's dismissal of the Bertrams' claims related to the foreclosure sale.  We remand the case to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**