[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 31, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15888
Non-Argument Calendar

_____

D. C. Docket No. 08-00162-CV-2-IPJ

STEVEN GREEN,
MARK PERSALL,
CHARLES HORTON,
JAMES PHILLIPS,
CASSIE BELL,
SHERRY J. AMICK,
WILLIAM V. ARNOLD,
LYNN G. BASWELL,
PHILLIP A. BAILEY,
SAMUEL R. BEARD,
and all those similarly situated as related to
Jefferson County Resolution No. 2006-683
and District Court case 2:08-00162-IPJ,

Plaintiffs-Appellants,

versus

JEFFERSON COUNTY COMMISSION,
GENERAL RETIREMENT SYSTEM FOR
EMPLOYEES OF JEFFERSON COUNTY, ALABAMA, THE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 31, 2009)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

In this case, Jefferson County employees challenge as unconstitutional and violative of federal law certain amendments made by the Jefferson County Commission to its retirement system. The district court dismissed the employees' claims, finding that (1) the claims constituted a <u>de facto</u> appeal from a previous state court judgment which rejected similar arguments and that, therefore, under the <u>Rooker-Feldman</u>[1] doctrine, the district court did not have jurisdiction to consider these claims; and (2) because the related state court judgment was on appeal to the Alabama Supreme Court, any ruling by the district court would be an "undue interference with state proceedings" and that, therefore, the district court must abstain from exercising its jurisdiction pursuant to the <u>Younger</u> doctrine.[2]

Both the <u>Rooker-Feldman</u> doctrine and the <u>Younger</u> doctrine are extremely

_____

[1] <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1986).

[2] <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

2

narrow exceptions to the federal courts' "virtually unflagging" duty "to adjudicate claims within their jurisdiction." New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 359 (1989) ("NOPSI"). Upon review of the parties' briefs and the record, we conclude that neither of these limited exceptions to our jurisdiction applies. We conclude, however, that the doctrine of res judicata, as applicable through the Full Faith and Credit Clause, does require dismissal of this case. Accordingly, we AFFIRM the disposition, although on a different ground than that relied upon by the district court.[3]

## BACKGROUND

The General Retirement System for Employees of Jefferson County, Alabama (the "Retirement System") was created in 1965 by an act of the Alabama legislature. It is funded by yearly contributions from the participating Jefferson County employees which are matched by yearly contributions from the County and by the income generated from the investment of those contributions. At some point during the 1970s, approximately 238 Jefferson County sheriff's deputies voluntarily withdrew from the Retirement System and removed their contributions, with interest.

---

[3] "We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

3

In 2003, the Alabama Legislature approved a local law, Alabama Act 2003-343 (the "Act"), allowing Jefferson County employees who had previously withdrawn from the Retirement System to rejoin and "make up" for up to 20 years in which they did not contribute to or participate in the Retirement System. The Act also allowed Jefferson County employees who had not withdrawn to convert periods of unpaid service to paid service upon making an additional contribution to the Retirement System. The Act then required the County to contribute matching funds for any employee taking advantage of the Act and to pay any additional amounts necessary to make the Retirement System actuarially sound. In other words, the Act required the County to contribute additional funds to replicate investment earnings that would have occurred had the employees in question continually contributed to the Retirement System.

After the Act was passed, two groups of county employees filed suit in state court to establish the constitutionality of the Act and to force the County to implement it. Sheriff Deputy Jimmy Black brought one of the class-action lawsuits on behalf of all deputies who had opted out of the Retirement System and who were seeking to rejoin as allowed under the Act. Certain other Jefferson County employees also sought a hearing before a special master when the County did not allow them to convert unpaid service to paid service under the Act.

4

Employee-members who had not opted out of the Retirement System brought a separate lawsuit seeking to invalidate the Act. These cases were all consolidated in the Jefferson County Circuit Court, with Black identified as the lead plaintiff ("Black"). In November of 2005, the Black court ruled that the Act, which created additional pension benefits for certain employees of Jefferson County, was constitutional and due to be enforced (the "November 2005 Order"). Thereafter, the court set deadlines for the County's compliance with the terms of the Act.

In an effort to offset the costs of funding the enhanced pension benefits mandated by the Act, the Jefferson County Commission passed Resolution No. 2006-683 on June 7, 2006 (the "Resolution"). The Resolution states that if a member of the Retirement System elects to take advantage of the additional pension benefits provided by the Act, he or she will no longer be eligible to receive the discretionary, non-pension benefits of retiree health insurance and sick leave retirement benefits. The County distributed the Resolution to persons eligible under the Act, giving them the opportunity to elect between (1) obtaining the Act's enhanced benefits and foregoing the non-pension benefits or (2) remaining eligible for retiree health insurance coverage and sick leave retirement benefits and foregoing the enhanced pension benefits available under the Act.

On June 19, 2006, the Black plaintiffs made a motion for supplemental relief

5

before the Jefferson County Circuit Court, arguing that the Resolution "impermissibly impairs and impedes" the November 2005 Order, which instructed the County to implement the Act. Specifically, the Black plaintiffs argued that the Resolution discourages those entitled to enhanced benefits under the Act from electing to receive those benefits, impermissibly imposes additional burdens upon the exercise of the rights established under the Act, and frustrates the enforcement and implementation of the Act as ordered by the court. Accordingly, the plaintiffs asked the court to enjoin the County from enforcing the Resolution as inconsistent with its Order to implement the Act.

The Black court held an evidentiary hearing on this motion for supplemental relief and, on September 14, 2006, it issued an order stating, in pertinent part:

> The Jefferson County Commission has been vested with the responsibility for maintaining a balanced budget for the County and funding and overseeing vital public services for the citizens of the County. In adopting the Resolution, the Commission did not abuse their vested discretion, and did not engage in fraud. This Court's inquiry must end there, as the authority to determine the appropriations necessary for the performance of government function is a legislative power, not a judicial power. This Court would infringe upon the boundaries between our State's branches of government delineated in Sec. 43 of the Alabama Constitution if it were to enjoin this Resolution. This Court also finds that the issues presented in Plaintiffs' challenge to the Resolution are completely separate and involve different facts, issues and theories than the previous action challenging Act 03-343. Thus, the Court finds that there is no justiciable issue involved in the Plaintiffs' Motion for Supplemental Relief. Therefore, it is hereby ORDERED, ADJUDGED AND

6

DECREED that Plaintiffs' Motion for Supplemental Relief is
DENIED.

(citations omitted, emphasis added). The <u>Black</u> plaintiffs did not appeal the denial

of their motion for supplemental relief. On November 17, 2006, the court certified

its judgment in the <u>Black</u> litigation as final. Neither party appealed from this final

judgment.

On May 18, 2007, six Jefferson County employees, including lead plaintiff

Steven Green,[4] filed a class action lawsuit against the Retirement System and the

County in the Circuit Court for Jefferson County, Alabama ("<u>Green I</u>"). The

<u>Green I</u> plaintiffs sought to represent the class of "107 Jefferson County

employees" who had elected to receive the additional pension benefits provided

under the Act. They argued that, by adopting the Resolution, the County had

retaliated against and treated the putative class unequally. Accordingly, the <u>Green</u>

<u>I</u> plaintiffs sought a declaration that the Resolution was invalid, a permanent

injunction preventing the operation of the Resolution, and damages measured by

the value of the sick leave retirement credit and retiree health insurance they had

been forced to forego by the Resolution. The County moved for summary

judgment, arguing (1) that the plaintiffs' claims were barred by the doctrines of <u>res</u>

---

[4] Throughout the state and federal suits at issue, the lead plaintiff is referred to as both "Steven Green" and "Steven Greene." For the sake of consistency, we refer to this plaintiff as "Steven Green."

judicata and collateral estoppel; (2) that Art. III, § 43, Ala. Const. 1901, prevented the trial court from hearing the plaintiffs' challenge to the Resolution; (3) that Alabama law does not recognize an equal-protection challenge; and (4) that the plaintiffs' claims are due to be dismissed because the plaintiffs did not present their claims to the Jefferson County Commission before commencing their action and, thereby, violated § 6-5-20 et seq., Ala. Code 1975.

On September 17, 2007, the Green I court issued a brief order stating, in toto:

> For the reasons stated therein, the defendants' motion for summary judgment is due to be GRANTED. Neither the named class representatives nor any member of the putative class may maintain the claims raised in the complaint.
> This action is therefore DISMISSED with prejudice, costs taxed as paid.

The Green I plaintiffs moved the trial judge to recuse himself and moved for a new trial or, in the alternative, to alter, amend, or vacate the judgment or for relief from judgment. The trial court denied these motions without comment. On November 1, 2007, the plaintiffs filed a notice of appeal with the Alabama Supreme Court.

On January 29, 2008, while Green I was pending on appeal before the Alabama Supreme Court, 104 Jefferson County employees, again led by Steven Green, filed the instant lawsuit against the Retirement System and Jefferson

8

County Commission in the federal district court for the Northern District of Alabama ("Green II"). All six of the named plaintiffs from Green I are plaintiffs in this litigation; 98 other employees are named as plaintiffs in Green II, all of whom elected to receive the additional pension benefits provided under the Act and were therefore members of the putative class in Green I. In their complaint, the Green II plaintiffs allege that, by adopting the Resolution, the defendants discriminated against them and violated their "procedural due process rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution" and "establish[ed] a policy of discriminating against them" in violation of the Public Health Services Act ("PHSA"), 42 U.S.C. § 300bb-1 to 8. Accordingly, the plaintiffs assert two causes of action: (1) for equitable relief pursuant to 42 U.S.C. § 300bb-7[5] and (2) for equitable relief and damages pursuant to 42 U.S.C. § 1983.

Defendants filed a motion to dismiss Green II. The district court referred the motion to a magistrate judge. After converting the motion to dismiss into a motion for summary judgment and allowing the parties to submit additional briefing, the magistrate judge issued a Report and Recommendation ("R&R"), recommending that the defendants' motion be granted. The R&R found that res judicata did not

---

[5] The PHSA provides individuals with a private cause of action for violations of its terms. 42 U.S.C. § 300bb-7 ("Any individual who is aggrieved by the failure of a State, political subdivision, or agency or instrumentality thereof, to comply with the requirements of this subchapter may bring an action for appropriate equitable relief.").

9

require dismissal, but (1) pursuant to the Rooker-Feldman doctrine, the district court had no jurisdiction to consider the claims brought by the six plaintiffs who were a party to Green I and (2) the Younger doctrine required the court to abstain from exercising jurisdiction over the claims asserted by the remaining ninety-eight plaintiffs. Accordingly, the R&R suggested that summary judgment was appropriate as to all of the plaintiffs' claims.

The plaintiffs filed objections to the R&R, to which the defendants responded. On October 7, 2008, in a brief opinion, the district court adopted the R&R in full and granted summary judgment in favor of defendants. The plaintiffs timely filed their notice of appeal to this court.

On November 14, 2008, while this appeal was pending before this court, the Alabama Supreme Court affirmed the state trial court's grant of summary judgment in Green I. — So.2d —, 2008 WL 4892051 (Ala. Nov. 14, 2008). The Alabama Supreme Court held that the decision in Black was on the merits such that the claims asserted in Green I were barred under the doctrine of res judicata. Id.

**STANDARD OF REVIEW**

We review dismissals for lack of subject matter jurisdiction de novo. Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006). We review a district court's decision to abstain from exercising its jurisdiction for an abuse of

10

discretion.  31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003).  An error of law constitutes an abuse of discretion.  Major League Baseball v. Crist, 331 F.3d 1177, 1183 (11th Cir. 2003) (citing United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999)).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "We can affirm a judgment on any legal ground, regardless of the grounds addressed and relied upon by the district court."  Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235-36 (11th Cir. 2004).

## DISCUSSION

On appeal, the plaintiffs argue that the district court erred in finding that Rooker Feldman and Younger – which represent narrow exceptions to a district court's jurisdiction – divested the court of jurisdiction in this case.  For the reasons stated herein, we agree.  Nonetheless, we affirm the grant of summary judgment in this case because, based on the res judicata principles of Alabama law, the state court's final judgments in the related cases of Black and Green I preclude our consideration of the plaintiffs' claims.

11

*A.       Rooker-Feldman Doctrine*

Generally speaking, the <u>Rooker-Feldman</u> doctrine recognizes that federal district courts do not have jurisdiction to act as appellate courts and precludes them from reviewing final state court decisions.  The underlying rational for this doctrine comes from two federal jurisdictional statutes: 28 U.S.C. § 1331 and 28 U.S.C. § 1257.  First, section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising" under federal law, but does not provide for appellate jurisdiction.  28 U.S.C. § 1331.  Second, section 1257 provides for Supreme Court review of state court judgments when certain federal questions arise.  28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari.").  "Taken together, the <u>Rooker-Feldman</u> doctrine draws a 'negative inference' from section 1257: 'because Congress *only* provided for review of state court judgments by the Supreme Court, Congress therefore intended to preclude lower federal courts from exercising such review.'" <u>Nicholson v. Shafe</u>, Nos. 08-11426, 08-13058, — F.3d —, 2009 WL 385579 at *4 (11th Cir. Feb. 18, 2009) (quoting <u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>, 410 F.3d 17, 21 (1st Cir. 2005)).

In the recent case of <u>Exxon Mobil</u>, the Supreme Court warned the lower

12

courts that we have extended this narrow doctrine "far beyond the contours of the Rooker and Feldman cases." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Court instructed that the doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. The Court further noted that Rooker-Feldman does not prohibit a "district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Id. at 293. Rather, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." Id.

Having received the Supreme Court's guidance in Exxon Mobil, the Eleventh Circuit recently considered the application of Rooker-Feldman in Nicholson, — F.3d at —. In Nicholson, we adopted the rule followed by several other circuits "that state proceedings have not ended for purposes of Rooker-Feldman when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that complains of injuries caused by the state court judgment and invites review and rejection of that judgment." Id.

13

(citing Guttman v. Khalsa, 446 F.3d 1027 (10th Cir. 2006), Federacion de Maestros de Puerto Rico, 410 F.3d at 17, Dornheim v. Sholes, 430 F.3d 919 (8th Cir. 2005)). We explained that "confining the scope of the Rooker-Feldman doctrine to instances where the state proceedings have ended, in line with both the Rooker and Feldman cases," heeds the Supreme Court's warning that the doctrine is limited and should be applied narrowly. Id. (citing Exxon Mobil, 544 U.S. at 283).

Applied here, the chronology of significant dates is as follows: the state court granted summary judgment in Green I on September 17, 2006; the Green I plaintiffs appealed the grant of summary judgment to the Alabama Supreme Court on November 1, 2007; the Green II plaintiffs filed the instant federal action on January 29, 2008; and the Alabama Supreme Court affirmed the state trial court's ruling in Green I on November 14, 2008, nearly one year after the commencement of these federal proceedings. As such, because an appeal of Green I remained pending in the state court at the time the Green II plaintiffs filed the instant case, the state court proceedings had not ended for purposes of Rooker-Feldman, as clarified by Exxon Mobil and Nicholson. Accordingly, this case was not a de facto appeal from a final state court judgment and the Rooker-Feldman doctrine did not divest the federal district court of jurisdiction.

14

*B.*     *Younger Abstention*

In Younger v. Harris, a federal plaintiff challenged the constitutionality of a state statute under which he was being prosecuted in state court as a defendant. 401 U.S. at 39. The Supreme Court, concluding that the state criminal proceeding offered a sufficient forum for the plaintiff to raise his constitutional defense, abstained from hearing the plaintiff's claim and stated the general rule that a federal district court must refrain from enjoining a pending criminal state court proceedings except under certain special circumstances. Id. at 53-54. Such abstention, the Supreme Court recognized, is required by "[o]ur Federalism['s]" notion of comity, that is, "a proper respect for state functions" and "the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Id.

The abstention doctrine derived from Younger applies most often in cases involving pending state criminal prosecutions. See, e.g., O'Shea v. Littleton, 414 U.S. 488, 500 (1974) (rejecting challenge to state criminal justice system "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials"); Luckey v. Miller, 976 F.2d 673, 677-78 (11th Cir. 1992) (abstaining from an attempt to "restrain every indigent prosecution and contest every indigent conviction until the systemic improvements

15

[plaintiffs] seek are in place"). Early on, the Court expanded <u>Younger</u> abstention to apply to pending civil proceedings that are "akin to a criminal prosecution," <u>see, e.g.</u>, <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592 (1975) (nuisance statute), <u>Middlesex County Ethics Comm. V. Garden State Bar</u>, 457 U.S. 423, 432 (1982) (state bar disciplinary hearing), and, more recently, in strictly civil proceedings which implicate state courts' "important interests in administering certain aspects of their judicial systems." <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 12-13 (1987) (requirement for the posting of bond pending appeal); <u>see Judice v. Vail</u>, 430 U.S. 327, 334 (1977) (state contempt process).

Even as the principles of <u>Younger</u> have expanded, however, the Supreme Court has made clear that the abstention doctrine is not triggered in a civil context unless the federal injunction requested would create an "<u>undue</u> interference with state proceedings." <u>NOPSI</u>, 491 U.S. at 359 (emphasis added). The <u>Younger</u> doctrine, like the <u>Rooker-Feldman</u> doctrine, is "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976) (quoting <u>County of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185, 188-89 (1959)). Accordingly, a district court should not lightly shirk its "virtually unflagging obligation to exercise the jurisdiction given [to it]." <u>Id.</u> at 818. In

16

addition, the Supreme Court has instructed that Younger only applies where the state proceeding at issue involves "orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions . . . it has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action." NOPSI, 491 U.S. at 368 (emphasis added); Wexler v. Lepore, 385 F.3d 1336, 1338-39 (11th Cir. 2004) (holding that a pending state civil action does not require the federal court to abstain "unless the requested federal relief would result in meticulous and burdensome federal oversight of state court or court-like functions").

In this case, the district court, adopting the magistrate judge's R&R, found that Younger barred its consideration of the remaining 98 plaintiffs' claims, explaining that because Green I was pending before the Alabama Supreme Court at the time, "if this court were to grant the relief requested by the plaintiff, it would effectively bar any action taken by the state courts." Furthermore, the district court noted that "the proceedings most certainly implicate a number of important state interests." However, as the district court itself noted, "The crux of the [Green II] complaint turns on the validity of a legislative enactment of the Jefferson County Commission, a political subdivision of the state, which affected discretionary employee benefits of government employees." Accordingly, it is clear that the

17

plaintiffs in this case did not ask the district court to enjoin or otherwise interfere with the pending state court action; rather, they challenged a legislative act of the Jefferson County Commission under federal law while, at the same time, state law challenges to the same legislative act were pending on appeal with the Alabama Supreme Court. Nothing in Younger or in any of its progeny requires a district court to abstain under these circumstances. See Wexler, 385 F.3d at 1340 (noting that "generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction"). Accordingly, the district court erred and thereby abused its discretion in finding that Younger required abstention in this case.

C.    *Res Judicata*

Although neither party challenges the district court's finding that res judicata does not apply in this case, we review de novo all portions of a district court's order granting summary judgment and may affirm on any legal ground. See Nat'l R.R. Passenger Corp. v. Roundtree Transp. and Rigging, 286 F.3d 1233, 1263 (11th Cir. 2002) (explaining that an appellate court may affirm the district court's grant of summary judgment "as long as the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted, or rejected by the

18

district court") (internal quotation and citation omitted). After reviewing this case and the related state court cases of <u>Black</u> and <u>Green I</u> – including the Alabama Supreme Court's recent decision in <u>Green I</u> – we conclude that, as a matter of law, consideration of this case is precluded by the state courts' judgments in <u>Black</u> and <u>Green I</u> under the doctrine of <u>res judicata</u>.

When we are considering whether to give <u>res judicata</u> effect to a state court judgment, we "must apply the <u>res judicata</u> principles of the law of the state whose decision is set up as a bar to further litigation." <u>Kizzire v. Baptist Health System, Inc.</u>, 441 F.3d 1306, 1308-09 (11th Cir. 2006) (citing <u>Amey, Inc. v. Gulf Abstract & Title, Inc.</u>, 758 F.2d 1486, 1509 (11th Cir. 1985)). Accordingly, in this case, Alabama's <u>res judicata</u> principles apply. Under Alabama law, "the essential elements of <u>res judicata</u> are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." <u>Equity Res. Mgmt., Inc. v. Vinson</u>, 723 So.2d 634, 636 (Ala. 1998). If all four elements are met, any claim that was, or could have been, adjudicated in the prior action is barred from future litigation. <u>Id.</u>

When the Alabama Supreme Court ruled on the appeal in <u>Green I</u>, it considered whether the decision in <u>Black</u> barred the claims asserted by the

19

plaintiffs in Green I. In considering this issue, the Court addressed the four elements of res judicata. First, the Alabama Supreme Court ruled that the Black court's "denial of the motion for supplemental relief was a final judgment on the merits for res judicata purposes." Green I, 2008 WL 4892051 at *5. Second, it ruled that this final judgment "was a decision rendered by a court of competent jurisdiction." Id. at *7. Third, the Alabama Supreme Court found that the "parties in the Black litigation are substantially identical to the parties involved in [Green I]." Id. at *8. The Court explained that under Alabama law, "[a] person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." Id. (citing Gonzalez, LLC v. DiVincenti, 844 So.2d 1196, 1203 (Ala. 2002)). Applying this rule, the Court found that "[i]n the Black litigation, the subclass of Jefferson County deputies and the subclass of Jefferson County employees had an identical interest in seeking the invalidation of the resolution because, under the terms of the resolution, members of both subclasses would have been required to forfeit certain discretionary benefits in order to opt back into the retirement system." Therefore, even though the Green I plaintiffs were not named plaintiffs in Black, the Alabama Supreme Court found that the third element of res judicata was met because the parties in Green I had "identical interests" as the parties

20

involved in the Black litigation.  Id.

Finally, addressing the fourth element of res judicata, the Court found that the same cause of action was presented in both Black and Green I.  It reasoned that "[r]es judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts."  Id. (citing Old Republic Ins. Co. v. Lanier, 790 So. 2d 922, 928 (Ala. 2000)) (emphasis in original).  Two causes of action are the same for res judicata purposes "when the same evidence is applicable in both actions."  Id. (citing Old Republic Ins. Co., 790 So. 2d at 928).  Because the Green I plaintiffs sought "a judgment declaring that the sole purpose of the resolution is to punish Jefferson County employees who convert unpaid service to paid service under the Act and a permanent injunction to prevent the County from enforcing the resolution" and the plaintiffs in the Black litigation "likewise sought to enjoin the County from enforcing the resolution," the Court found "the claims in the two cases arise out of the same nucleus of operative facts."  Id. at *9.  Additionally, the Court noted that the Green I plaintiffs, in seeking to prevent the County from enforcing the Resolution, "rely on the same evidence and advance many of the same arguments raised in the plaintiffs' motion for supplemental relief in the Black litigation."  Id.  Accordingly, the Court found that the final element of res judicata

21

was met because the cause of action asserted in Green I was the same cause of action raised in Black. For these reasons, the Alabama Supreme Court concluded that the claims raised by the Green I plaintiffs were barred and it affirmed the state trial court's judgment. Id.

Applying the decision in Green I to the case before us, we must conclude that the Alabama Supreme Court would find that the claims asserted by the Green II plaintiffs are also barred under the doctrine of res judicata. Regarding the first and second elements of the doctrine, we are bound by the Alabama Supreme Court's finding that Black was a final judgment on the merits rendered by a court of competent jurisdiction. San Remo Hotel, L.P. v. City and County of San Francisco, Cal., 545 U.S. 323, 348 (2005) (holding that a plaintiff is precluded by the full faith and credit statute, 28 U.S.C. § 1738, from relitigating those issues which were adjudicated by a state court). Similarly, following the Alabama Supreme Court's guidance, we must also conclude that the plaintiffs in the case before us – 104 Jefferson County employees who elected to receive the additional pension benefits provided under the Act – are "substantially identical" to the plaintiffs involved in both the Black and Green I actions.[6] This is so because the plaintiffs in all three cases share an identical interest in "seeking the invalidation of

---

[6] As we noted above, six of the Green II plaintiffs are the same as the named Green I plaintiffs; the remaining Green II plaintiffs are members of the putative class named in Green I.

22

the resolution because . . . [they all] would have been required to forfeit certain discretionary benefits in order to opt back into the retirement system."  Green I at *8.  This shared interest makes these parties "substantially identical" for purposes of preclusion under Alabama law.  Id.

The only remaining question, therefore, is whether the causes of action in Black and Green I are identical to the causes of action asserted in the case at bar.  Clearly, the plaintiffs in Black and Green I did not assert causes of action pursuant to 42 U.S.C. § 1983 and the PHSA; however, the Alabama Supreme Court has explained that, regardless of the "exact legal theory" advanced in the prior case, claims are "identical" for purposes of res judicata if they "aris[e] out of the same nucleus of operative facts" and if "the same evidence is applicable in both actions." Id.  In this case, the plaintiffs – like the plaintiffs in Green I – sought a permanent injunction of the enforcement of the Resolution and damages measured by the value of the sick leave retirement credit and retiree health insurance.  Following the Alabama Supreme Court's recent decision, we must conclude that because the relief sought is identical, the "claims in the two cases arise out of the same nucleus of operative facts."  Additionally, a review of the plaintiffs' complaint shows that, in seeking to prevent the County from enforcing the Resolution, the plaintiffs rely on the same evidence and advance many of the same arguments raised by both the

23

Black and the Green I plaintiffs. Therefore, we conclude that the final element of res judicata is met.

Applying Alabama preclusion law, as described by the Alabama Supreme Court in Green I, we conclude that there was a prior final judgment on the merits in the Black litigation, that that judgment was rendered by a court of competent jurisdiction, that the parties in the Black litigation, the Green I litigation, and this action are substantially identical, and that the cause of action was the same in all three disputes. Thus, the four elements of res judicata are met and the claims raised by the plaintiffs are barred as a matter of law.

Accordingly, we AFFIRM the district court's grant of summary judgment.