[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10024

_____

D. C. Docket No. 3:13-cv-01587-TJC-JBT

ASKARI ABDULLAH MUHAMMAD,
f.k.a. THOMAS KNIGHT,

Plaintiff - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
WARDEN, FLORIDA STATE PRISON,
ATTORNEY GENERAL, STATE OF FLORIDA,
DOES 1–50
in their official capacity,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 7, 2014)

Before MARCUS, WILSON, and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

Askari Muhammad murdered a prison guard, Richard James Burke, by stabbing him more than a dozen times with a knife made from a sharpened serving spoon, and a Florida trial court convicted Muhammad of first-degree murder and sentenced him to death. When he murdered Burke, Muhammad was already serving a death sentence for his separate murders of a Miami couple. State and federal courts have affirmed his death sentence on direct and collateral review.

On October 21, 2013, the Governor of Florida signed a death warrant for Muhammad, who is scheduled to be executed on January 7, 2014, at 6 p.m. Muhammad then filed in the district court a civil action challenging the method of execution in Florida as cruel and unusual under the Eighth Amendment, 42 U.S.C. § 1983, even though the Supreme Court of Florida, on December 19, 2013, rejected the identical claim and ruled that the method of execution is not cruel or unusual. *See Muhammad v. State*, No. SC13-2105, 2013 WL 6869010 (Fla. Dec. 19, 2013). He also filed a motion for a stay of execution and an amended motion for a stay of execution, both of which the district court denied. Muhammad now appeals to our Court and asks us to reverse the decisions of the district court and to grant a stay of execution. We **AFFIRM** the denial of the motions for a stay of execution by the district court, and we **DENY** the application for a stay of execution Muhammad filed in our Court.

## I.  BACKGROUND

On October 29, 2013, less than two months before this federal litigation began, Muhammad filed in a circuit court of Florida a motion to vacate the judgment of his

2

conviction and sentence, which raised an identical challenge to the use of midazolam hydrochloride in the three-drug lethal injection protocol that he now raises in federal court. Muhammad argued in the circuit court that the use of midazolam hydrochloride, the first drug in the three-drug lethal injection protocol that the State of Florida approved on September 9, 2013, violates the prohibition of cruel and unusual punishments in the Eighth Amendment. The motion alleged that midazolam hydrochloride does not effectively anesthetize the inmate before the second and third drugs are administered, and, as a result, the inmate is subject to "intolerable risks of pain and suffering." On November 18, 2013, the Supreme Court of Florida stayed Muhammad's execution and ordered an evidentiary hearing on the effect of midazolam hydrochloride. On November 21, 2013, an evidentiary hearing was held, in which Agent Jonathan Feltgan, a Florida Department of Law Enforcement Inspector, Dr. Mark Heath, an expert for the defense, and Dr. Roswell Lee Evans, an expert for the State, testified. After the evidentiary hearing, the circuit court denied relief on the grounds that the dosage of midazolam hydrochloride would render a person insensate and there was no evidence that the use of the drug in the three-drug protocol would result in a substantial risk of serious harm.

The Supreme Court of Florida affirmed the decision of the circuit court that the use of midazolam hydrochloride did not create a substantial risk of serious harm, as follows:

The Supreme Court's plurality decision in *Baze* [*v. Rees*] held that the petitioners in that case "have not carried their burden of showing that the risk of pain from maladministration of a concededly humane lethal injection protocol" constitutes cruel and unusual punishment. [553 U.S. 35, 41, 128 S. Ct. 1520, 1526 (2008)]. Muhammad makes a similar claim in this case that, if not properly administered and if the individual's level of consciousness is not properly determined, the use of midazolam hydrochloride will result in severe and needless suffering when the two subsequent drugs are administered. However, Dr. Heath agreed that the dosage of midazolam hydrochloride called for in the protocol, if properly administered together with adherence to the procedures for determining consciousness, will result in an individual who is deeply unconscious and who would feel no pain when the remaining drugs are administered.

We reject Muhammad's invitation to presume that the DOC will not act in accordance with its lethal injection procedures adopted by the DOC. The sufficiency of those procedures, other than the recent substitution of the midazolam hydrochloride as the first drug, were previously approved by this Court after a comprehensive evidentiary hearing in *Lightbourne v. McCollum,* 969 So. 2d 326 (Fla. 2007). When we relinquished for an evidentiary hearing in *Valle* [*v. State*] to examine the safety and efficacy of pentobarbital, which had been substituted as the first drug in the three-drug lethal injection protocol, we reiterated that the portion of Florida's lethal injection protocol ensuring that an inmate will be unconscious prior to administration of the second and third drugs has not been altered since the protocol was approved in *Lightbourne. Valle,* 70 So. 3d at 541 n.12. Under that protocol, "he will not be injected with the final two drugs, and the execution will be suspended until Valle is unconscious." *Id.* In the instant case, as we said in *Valle,* the remainder of the protocol has not been revised. We presume that the DOC will follow its own procedures and Muhammad will not be injected with the final two drugs until he is unconscious.

We acknowledge that, as we explained in *Lightbourne,* if the inmate is not fully unconscious when the second and third drugs, vecuronium bromide and potassium chloride, are administered, the inmate will suffer pain. *See Lightbourne,* 969 So. 2d at 351. However, we agree with the circuit court that Muhammad has not demonstrated that the conditions presenting this risk are "sure or very likely" to cause serious illness or needless suffering and give rise to "sufficiently imminent dangers" under

4

the standard set forth in *Baze.* Thus, we reject his constitutional challenge to the use of midazolam hydrochloride in the lethal injection procedure. *See also Valle,* 70 So.3d at 540–41 (rejecting challenge to newly-revised protocol substituting pentobarbital for the first drug in the three-drug protocol because Valle failed to show that the conditions presenting the risk must be sure or very likely to cause serious illness and needless suffering and give rise to sufficiently imminent dangers).

*Muhammad*, 2013 WL 6869010, at *10–11 (footnotes omitted). On December 27, 2013, Muhammad petitioned for a writ of certiorari from the Supreme Court of the United States, which is still pending.

On December 23, 2013, Muhammad filed a complaint in the district court raising the same challenge to the lethal injection protocol against Michael Crews, in his official capacity as the Secretary of the Florida Department of Corrections, John Palmer, in his official capacity as the Warden of Florida State Prisons, Pam Bondi, in her official capacity as the Attorney General of Florida, and Does 1-50, executioners for the State of Florida. Muhammad's federal complaint alleged, like his state-court motion, that the use of midazolam hydrochloride, the first drug in the three-drug lethal injection protocol, violates the prohibition of cruel and unusual punishments in the Eighth Amendment. *See* 42 U.S.C. § 1983. The federal complaint alleged verbatim that midazolam hydrochloride, used to render the inmate unconscious, is not as effective as other drugs used as anesthetics in executions. The complaint alleged that the consciousness check currently in use is inadequate to ensure the inmate remains unconscious for the entire execution. Moreover, the complaint alleged that midazolam hydrochloride takes more time to take effect, but that the Department of Corrections

5

did not adjust its lethal injection protocol to increase the amount of time between the injection of midazolam hydrochloride and the second and third drugs and "the failure to adjust the protocol or wait the prescribed amount of time creates a substantial risk of harm to Mr. Muhammad because he will be injected with an agonizing paralytic before the midazolam has ablated consciousness." The federal complaint relied on news articles, which reported that an inmate moved in a previous execution after the drug was administered, and testimony from the evidentiary hearing on the use of the drug ordered by the Supreme Court of Florida.

Muhammad also filed a motion to stay his execution, which the district court denied. Muhammad argued that a stay was warranted because the testimony from the state-court evidentiary hearing established that the use of midazolam hydrochloride created a substantial risk of serious harm. The district court denied the motion because Muhammad failed to establish a substantial likelihood of success on the merits. The district court ruled that the statute of limitations barred his claim. Alternatively, the district court ruled that Muhammad's Eighth Amendment challenge was unlikely to succeed on the merits.

Muhammad filed a motion for reconsideration of the denial of the stay, which the district court denied. Before the district court ruled on the motion, the district court ordered the Florida officials to produce documents it disclosed in other state-court litigation challenging the lethal injection protocol. The officials objected to the

6

order, but complied in part. After reviewing the execution logs and other documents produced by the officials, the district court denied the motion for reconsideration.

Based on the documents produced by Florida officials, Muhammad filed an amended complaint and an amended motion to stay his execution. The amended complaint relied on execution logs produced by the Department of Corrections, in addition to the articles about a past execution and testimony from the evidentiary hearing. The amended complaint argued that the execution log of Agent Jonathon Feltgen, an execution monitor, did not chart the amount of time between the administration of midazolam hydrochloride and the second drug, which is "a critical part of the constitutional analysis." The amended complaint alleged that "[t]he failure to accurately and adequately document and detail the events that the monitors are observing demonstrates the trained or ingrained desire to keep secret any perceived problems that occur in an execution," and "[t]his culture of secrecy places Mr. Muhammad at a substantial risk of serious harm."

The district court denied the amended motion to stay the execution. The court ruled that Muhammad "has failed to show a substantial likelihood of success on the merits of [his] lethal injection claim, even as amended." Muhammad timely appealed the denial of the motion to stay the execution and the denial of the amended motion to stay the execution on January 3, 2014. He also filed an application to stay his execution in our Court on January 6, 2014.

## II. STANDARD OF REVIEW

7

We review the denial of a stay of execution for abuse of discretion. *See Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011). We will grant a stay of execution only if the moving party establishes that: "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." *Id.*

## III. DISCUSSION

The district court did not abuse its discretion when it denied the motion to stay the execution and the amended motion to stay the execution, nor will we grant the application for a stay of execution filed in our Court. Muhammad cannot establish that he has a substantial likelihood of success on the merits. The Supreme Court of Florida has already decided his Eighth Amendment claim, *Muhammad*, 2013 WL 6869010, at *10–11, and res judicata bars his federal complaint. The State of Florida has raised the defense of res judicata in both the district court and in our Court. Muhammad has never offered an explanation to rebut the argument that res judicata bars his federal complaint.

When we consider "whether to give *res judicata* effect to a state court judgment, we 'must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation.'" *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1252 (11th Cir. 2009) (quoting *Kizzire v. Baptist Health Syst., Inc.*, 441 F.3d 1306, 1308–09 (11th Cir. 2006)). Florida law establishes that "[a] judgment on the merits rendered in

8

a *former* suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) (quoting *Kimbrell v. Paige*, 448 So. 2d 1009, 1012 (Fla. 1984)). In other words, a judgment on the merits bars a later-filed complaint when the following four conditions are present: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in persons for or against whom [the] claim is made." *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1332 (11th Cir. 2010) (internal quotation mark omitted). Florida law defines identical causes of action as causes "sharing similarity of facts essential to both actions." *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1307–08 (11th Cir. 1992) (internal quotation marks omitted).

Under the Florida law of res judicata, the rejection of Muhammad's Eighth Amendment claim by the Supreme Court of Florida on December 19, 2013, bars his attempt to litigate that claim anew in federal court. *See Fla. Dep't of Transp.*, 801 So. 2d at 105 ("[A] judgment rendered by a court of competent jurisdiction, on the merits, is a bar to any future suit between the same parties or their privies on the same cause of action, so long as it remains unreversed." (quoting *McGregor v. Provident Trust Co.*, 162 So. 323, 327 (Fla. 1935))). The decision rendered by the Supreme Court of Florida was a judgment on the merits that rejected the same claim Muhammad now alleges in

9

federal court: the use of midazolam hydrochloride in Florida's three-drug lethal injection protocol creates a substantial risk of serious harm. The cause of action is the same in federal court as it was in state court because both actions involve similar facts essential to the Eighth Amendment claim: allegations that an inmate executed in October 2013 moved minutes after the administration of midazolam hydrochloride; allegations that midazolam hydrochloride does not last as long as other drugs used as anesthesia in executions; allegations that midazolam hydrochloride requires more time to take effect; and allegations that the Department of Corrections fails to follow protocol during executions by failing to ensure that the inmate is unconscious. We acknowledge that the amended complaint incorporates factual allegations derived from the execution logs that Florida officials disclosed to Muhammad and the district court after the Supreme Court of Florida issued its decision. But those execution logs provide only more detailed factual allegations about previous executions that Muhammad extensively discussed in his motion for relief that the Supreme Court of Florida rejected. Finally, the parties involved in the state-court action and the federal lawsuit are also the same. The individuals named in the federal lawsuit are sued in their official capacity and are in privity with the State of Florida, the defendant in the state-court action. *See Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995) ("[W]here a plaintiff brings a[] [§ 1983] action against a public official in his official capacity, the suit is against the office that official represents, and not the official himself.").

10

Because res judicata bars Muhammad from relitigating these claims in his federal complaint, Muhammad has failed to establish a substantial likelihood that can succeed on the merits. The district court did not err when it denied Muhammad's motions to stay the executions, and we refuse to grant his application in our Court. Federal review of Muhammad's Eighth Amendment claim, already decided by the Supreme Court of Florida, is available in the Supreme Court of the United States, in which his petition for a writ of certiorari is pending.

## IV.  CONCLUSION

We **AFFIRM** the denial of the motions for a stay of execution. We **DENY** Muhammad's application for a stay of execution. We **DENY** Muhammad's request for oral argument.