[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14300
Non-Argument Calendar

_____

D.C. Docket No. 3:19-cv-00124-HES-JRK

OCEAN PALM GOLF CLUB PARTNERSHIP,

Plaintiff-Appellant,

versus

THE CITY OF FLAGLER BEACH,
a Florida Municipal Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 2, 2021)

Before WILLIAM PRYOR, Chief Judge, NEWSOM and LAGOA, Circuit Judges.

PER CURIAM:

Ocean Palm Golf Club Partnership appeals the summary judgment against its complaint that the refusal of the City of Flagler Beach to modify an expired agreement that rezoned a parcel on a golf course to create a residential development constituted a taking without just compensation in violation of the Fifth and Fourteenth Amendments. 42 U.S.C. § 1983. The district court ruled that the complaint was barred by res judicata. We affirm.

The Club was a partner in the development of 34 acres to operate a nine-hole public golf course. In 1989, the partnership and the City executed an agreement that rezoned 2.94 acres of the 34-acre "recreational use" property for "high density residential" use. The agreement gave the partnership until July 1, 2003, to construct a building no taller than 85 feet that was "limited to eighty-four residential units with a restaurant and golf facilities." The partnership began updating the golf course with the proceeds it expected from the residential property.

Plans to develop the residential property failed for a variety of reasons. In 2000, the partnership submitted two proposals, but the City vetoed the concept of a tower and rejected the idea for three connected buildings as inconsistent with the development agreement. In 2001, the partnership deeded the residential property to Caribbean Condominium, an entity formed by the principal and president of the Club and other members. Before the agreement expired, the City accepted a

2

proposal from Caribbean to build a tower, but the City imposed a limitation on the length of the tower that proved unworkable. After the agreement expired, Caribbean submitted a second proposal, which it abandoned when unable to resolve problems the City identified.

In 2008, the Club applied to amend the development agreement to allow construction of single-family homes on the residential property and on the golf course. The City denied the amendment after members of the public opposed it during two separate hearings. The Club challenged the decision, but a Florida court ruled that the City acted within its discretion in denying the amendment. The golf course closed and the 34-acre property went into foreclosure.

In February 2010, the Club and Caribbean filed a complaint in state court against the City for inverse condemnation. The companies amended their complaint to add claims of total and partial takings without just compensation in violation of the Fifth and Fourteenth Amendments. But after the City removed the action to the district court, the companies voluntarily dismissed their federal claims and the district court remanded the action to state court.

In a second amended complaint filed in the state court, the companies alleged that the "combined effect" of the height restrictions the City imposed and its rejection of the "plan amendment request" deprived the companies of all economic benefit use of the golf course that amounted to a total taking.

3

Alternatively, the companies alleged that the actions of the City caused a substantial diminution in the value of the golf course that constituted a partial taking.

After a three-day bench trial, the state court entered judgment in favor of the City. The state court ruled that the City did not take the golf course without compensation because it was "designated Recreational by the landowners' agreement" and "the land owner was compensated by [receiving] . . . the right to develop the 2.94 acres by July 1, 2003." The state court also "consider[ed] [the] economic beneficial use of the 34 acres separately and jointly with the 2.94 acres." The state court found that, "together . . . there is an economic beneficial use of the property as a golf course," and that the "golf course standing alone . . . [also had] an economic beneficial use" because "[w]hen factoring out the deductions for interest and depreciation on the tax returns, . . . there was a profit in 2001 . . . [through] 2005" and the "losses, in large measure, [were] the result of basis costs."

The Club appealed, and the Fifth District Court of Appeal affirmed. *Ocean Palm Golf Club P'ship v. City of Flagler Beach*, 139 So. 3d 463 (2014). The appeals court rejected the companies' argument that, under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), they were deprived of all economically beneficial use of the golf course. *Ocean Palm*, 139 So. 3d at 471–73.

4

The appeals court also "[b]alanc[ed] [the] three *Penn Central* factors . . . and conclude[d] that there was no partial taking here." *Id.* at 473–74.

In January 2019, the Club filed a two-count complaint in the district court. The Club complained "of an inverse condemnation under the United States Constitution for denial of all economically beneficial use of [its] land under *Lucas v. South Carolina Coastal Council*." Alternatively, it complained "of an inverse condemnation under the United States Constitution based on [an] ad hoc factual inquiry under *Penn Central Transportation Co. v. City of New York*." The City filed a motion to dismiss, which the district court treated as a motion for summary judgment.

The district court entered summary judgment in favor of the City based on res judicata. The district court determined that "both at trial and on appeal, it is clear [the Club] actually litigated and the state courts actually decided the *Lucas* and *Penn Central* claims reasserted in this federal suit." The district court also determined that the "identity of the thing sued for" in federal and state court—that is "the taking of the golf-course parcel"—was identical.

We review *de novo* a summary judgment. *Vazquez v. Metro. Dade Cnty.*, 968 F.2d 1101, 1106 (11th Cir. 1992). "The factual determinations underlying the [district] court's legal conclusion—such as the determination that an issue was

actually litigated in the prior proceeding—are to be upheld on appeal unless clearly erroneous." *Id.*

To determine "whether to give *res judicata* effect to a state court judgment, we must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Muhammad v. Sec'y, Fla. Dep't of Corr.*, 739 F.3d 683, 688 (11th Cir. 2014) (quoting *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1252 (11th Cir. 2009)). Under Florida law, "[a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." *Id.* (quoting *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001)). So a judgment on the merits by a state court bars a later complaint when "(1) the parties are identical with those from the prior case, (2) the issues are identical, (3) there was a full and fair opportunity to litigate the issues and they were actually litigated, and (4) those issues were necessary to the prior adjudication." *Agripost, LLC v. Miami-Dade Cnty., Fla.*, 525 F.3d 1049, 1055 (11th Cir. 2008).

Res judicata bars the Club's complaint against the City. The Club litigated the same cause of action against the City in the Florida courts. The Club argues

that the analysis undertaken by the state court on the "*Lucas* taking claim . . . was inadequate" and that its "*Penn Central* claim was not fully or fairly litigated or actually decided." But "Florida preclusion law does not allow [the Club] a second bite at the apple, and [the full faith and credit statute, 28 U.S.C.] § 1738[,] does not permit this court to second-guess the correctness of the Florida court's decision on the merits." *Id.* at 1056. The district court correctly dismissed the complaint filed by the Club.

The Club argues that *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), "allows it to bring its federal taking claims in federal court notwithstanding" the application of res judicata, but it misreads that decision. In *Knick*, the Supreme Court eliminated the requirement enunciated in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), that a landowner whose property is taken by local government exhaust state compensation procedures before he can bring a federal takings claim in federal court. 139 S. Ct. at 2167–68. But in *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005), the Court held that the decision of a state court on a claim for just compensation under state law generally has preclusive effect in a later federal action. And in *Knick*, the Court explained that *San Remo* revealed the flaws in the *Williamson County* exhaustion requirement. 139 S. Ct. at 2167; *see Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299,

7

1303 (11th Cir. 1992) (highlighting the same flaws). The *Knick* Court did not overrule or otherwise modify its precedent in *San Reno*.

The Club also argues that the intervening decision of the Supreme Court in *Murr v. Wisconsin*, 137 S. Ct. 1933 (2017), would have required the state court to evaluate the economically beneficial use of the golf course apart from the residential property. But the state trial court did just that. And the state court determined that the "golf course standing alone . . . [had] an economic beneficial use."

We **AFFIRM** the dismissal of the Club's complaint against the City.

8